IN THE UNITED STATES DISTRICT COURT
FOR EASTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| AMERICAN TRAFFIC SOLUTIONS, INC. ) | | |
| ) | | |
| Plaintiff, ) | | Case No. 4:13-cv-00229-AGF |
| ) | | |
| v. ) | | |
| ) | | |
| B&W SENSORS LLC, ) | | **FILED UNDER SEAL** |
| ) | | |
| Defendant. ) | | |

**DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFF'S SUPPLEMENTAL
PRELIMINARY INJUNCTION BRIEF**

**I.   ATS BEARS THE BURDEN OF PROOF**

As movant, ATS must prove that the four controlling factors weigh in favor of a preliminary injunction. ATS argues throughout its supplemental brief that B&W bears the burden of proving invalidity by clear and convincing evidence—the heightened standard that applies at trial. ATS's Brief (Doc. No. 107) at 6, 7, 8, and 10.[1] ATS incorrectly attempts to shift (and heighten) the burden of proof on the issue of invalidity. At the preliminary injunction stage, the burden to show validity is, ultimately, with the movant, and all an alleged infringer must do is raise a "substantial question" as to validity to defeat the motion. *Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1358-59 (Fed. Cir. 2001) ("The showing of a substantial question as to invalidity thus requires *less proof than the clear and convincing showing necessary to establish invalidity itself.*") (emphasis added).

---

[1] ATS relies on two cases for its proposition that "clear and convincing evidence" is required: *Finnigan Corp. v. Int'l Trade Co.*, 180 F.3d 1354 (Fed. Cir. 1999) and *H.H. Robertson Co. v. United Steel Deck, Inc.*, 820 F.2d 384 (Fed. Cir. 1987). *Finnigan Corp.* is inapposite in that it is not dealing with a preliminary injunction (or any injunction), but is looking at invalidity at a trial on the merits. Unlike here, the *H.H. Robertson* court relied on a prior adjudication of validity for the patent-in-suit to find the patent valid. In any event, *H.H. Robertson* states that the movant must show a likelihood of success on the merits.

## II.   ATS HAS FAILED TO SHOW THAT B&W'S INVALIDITY CONTENTIONS LACK SUBSTANTIAL MERIT

### A.   The Copied Claims of the '863 Patent are Invalid Under 35 U.S.C. § 112(a)

There is no basis in the '863 patent's specification to conclude that Jigang Wang "actually invented the invention claimed." B&W's Brief (Doc. No. 103) at 5-8; *see Ariad Pharms., Inc. v. Eli Lilly and Co.*, 598 F.3d 1336, 1351 (Fed. Cir. 2010) (en banc). B&W identified six separate copied claim limitations that do not have support in the '863 patent. *See* B&W's Brief at 6-7. B&W explained in detail how the disclosure within the four corners of Wang's specification did not demonstrate that Wang possessed these features. *Id*.

ATS provides no evidence to show that B&W's written-description challenge lacks substantial evidence. ATS does not dispute that there is no disclosure of these features in the specification. Instead, ATS argues that "the items identified by B&W . . . were certainly *well-known to one skilled in the art* in light of the specification of the '685 [sic] patent." ATS's Brief at 7 (emphasis added). ATS's conclusory argument is tantamount to an assertion that the undisclosed subject matter would have been *obvious* to one skilled in the art—an argument that the Federal Circuit has rejected. *PowerOasis, Inc. v. T-Mobile USA, Inc*., 522 F.3d 1299, 1310 (Fed. Cir. 2008) (rejecting patentee's expert testimony that the missing subject matter was "well known"—"Obviousness simply is not enough; the subject matter must be disclosed to establish possession"); *TurboCare Div. of Demag Delaval Turbomachinery Corp. v. General Elec. Co.*, 264 F.3d 1111, 1119  (Fed. Cir. 2001); *Lockwood v. American Airlines, Inc.*, 107 F.3d 1565, 1572 (Fed. Cir. 1997) ("One shows that one is 'in possession' of the invention by describing the invention, with all its claimed limitations, *not that which makes it obvious*.") (emphasis added).

In support of its argument that the '863 patent's specification satisfies the written description requirement, ATS cites to three cases: *Pozen Inc. v. Par Pharm., Inc.*, 696 F.3d 1151

2

(Fed. Cir. 2012); *Space Sys./Loral, Inc. v. Lockheed Martin Corp.*, 405 F.3d 985 (Fed. Cir. 2005); and *Streck, Inc. v. Research & Diagnostic Sys.*, 665 F.3d 1269 (Fed. Cir. 2012). None of these cases supports ATS's position.

The *Pozen* court found that certain claim terms relating to the packaging of the pharmaceutical invention at issue were necessarily described in the specification in part because pharmaceuticals are not "simply handed out to patients" without containers. *Pozen*, 696 F.3d at 1166. Therefore, requiring the patentee to specifically disclose pharmaceutical containers in the specification would be needlessly tedious. *Id.* at 1166. In *Space Sys.*, the alleged infringer's own expert testified that there was adequate support in the specification for the claim term in question. *Space Sys.* 405 F.3d at 989. And the *Streck* court found ample support in the specification for the claim terms in question. *Streck*, 665 F.3d at 1286.

Here, by contrast, the details missing from the '863 patent's specification were not necessarily present in what was expressly described. And the '863 patent's inventor was only able to point to vague references in the specification that do not demonstrate possession of the claimed features copied from B&W.

  **B.  The Asserted Claims of the '685 Patent are Invalid**

    *1.  The claims of the '685 patent are invalid as indefinite under § 112(b)*

In its opening brief, ATS primarily rehashes its prior arguments from its claim construction briefing. B&W has previously explained why, under controlling Federal Circuit precedent, ATS injected a fatal flaw into its claims by purposefully inserting the ambiguous, "sufficiently accurate" language. Rather than repeat these arguments, B&W refers the Court to the claim construction briefing on this point. Doc. No. 87 at 11-14; Doc. No. 93 at 8-13.

3

A few points bear emphasizing, however.  First, to try to explain the inconsistency in its prior positions, ATS cites a number of cases.  ATS's Brief at 10, n.3.  But these cases relate to infringement issues, and have no bearing on the indefiniteness issue before the Court.  These cases stand for the unremarkable proposition that even if infringement only occurs some of the time, liability can still result (depending on the claim language at issue).  The problem with the '685 patent claims is not in how to apply a definite claim requirement in analyzing infringement; the problem is whether the claim language is sufficiently definite to serve the public notice function required under § 112(b).

Second, ATS relies heavily on the formula that shows the mathematical relationship between uncertainties in "T" and "D," which shows that these variables must be tightly controlled to achieve +/- 1 mph.  ATS misses the point.  B&W agrees that this specification language may have been helpful if the claim language was written as follows: "wherein the real world position and accessed timing information are sufficiently accurate for the error in speed to stay below +/- 1 mph."  Then one skilled in the art could use the formula to try to develop a system that achieved (or avoided) the claimed feature.  Indeed, the Federal Circuit has encouraged patent applicants to include such quantitative limitations to give the public fair notice of its asserted property right, and ATS could have easily done so here.  *Halliburton*, 514 F.3d at 1256-57.  But ATS strategically chose not to.  As explained previously, even now, ATS is not willing to commit to a definite standard, like +/- 1 mph.  Doc. No. 93 at 11; Wang Decl. (Doc. No. 89) at ¶ 10-13.

Finally, ATS's opening brief highlights further variables that contribute to the uncertainty surrounding the claims' boundaries—weather and time of day.  ATS's Brief at 10, n.3

        2.     *The claims of the '685 patent are obvious in light of the prior art*

An essential aspect of the likelihood of success on the merits in a patent infringement case is an invalidity analysis based on prior art. ATS implies that B&W is precluded from making any prior-art-based invalidity arguments because these grounds were not known to B&W during a telephone conference with the Court. ATS's Brief at 6; Ex. 10.[2] But since the March 11, 2013 telephone conference, two important developments occurred that elevated the importance of the prior art to the likelihood-of-success prong of the Court's analysis.

First, ATS has asked the Court to broadly construe the claims of the '685 patent—which, if adopted, would erase the critical distinctions from the prior art that were added to the claims during prosecution to secure allowance. For example, ATS argues that "timing information" broadly includes using known frame rates to determine how much time has elapsed for purposes of calculating speed. Similarly, ATS now attempts to downplay the significance of the "sufficiently accurate" claim limitation, which was also used during prosecution to distinguish the '685 patent from the (allegedly) less accurate prior-art Ciolli patent. Doc. No. 103-7; Doc. No. 103 at 9. Although these broad constructions would certainly advance ATS's infringement agenda, to successfully demonstrate a likelihood of success on the merits, ATS must also deal with the invalidity ramifications of its litigation strategy. *See Amazon.com, Inc.*, 239 F.3d at 1351 ("Because the claims of a patent measure the invention at issue, *the claims must be interpreted and given the same meaning for purposes of both validity and infringement analyses* .

---

[2] ATS also asserts that B&W has only "leveled one invalidity challenge to the '685 patent" in its interrogatory responses. ATS's Brief at 8. But the interrogatory relied on by ATS did not ask for *all* invalidity grounds: "Separately for each claim of the patents-in-suit that you believe is or may be invalid *for reasons other than prior art*, please provide the complete factual basis therefor." Ex. 18 at 6 (Interrogatory No. 3) (emphasis in original). This provides no basis for ATS to avoid the prior art in addressing the likelihood-of-success factor.

. . . 'A patent may not, like a 'nose of wax,' be twisted one way to avoid anticipation and another to find infringement.'") (emphasis added) (citations omitted).

Second, during the deposition of ATS's two declarants (Tuton and Wang), it was revealed that before [Redacted]

[Redacted]

[Redacted] Ex. 16 ("Arundel"). As such, this offer made more than one year prior to the filing date of the asserted '685 Wang patent is prior art under 35 U.S.C. §102(b). *Pfaff v. Wells Electronics, Inc.*, 525 U.S. 55, 67 (1998); *Honeywell Int'l Inc. v. Nikon Corp.*, 672 F. Supp. 2d 638, 642-43 (D. Del. 2009). [Redacted]

[Redacted] ATS offered to provide this

---

[3] Tuton's deposition was on April 30, 2013. On May 3, 2013, B&W served requests for production (Ex. 17) on ATS to learn the details concerning this prior art and asked ATS to expedite the production. Four days ago, on May 24, ATS "voluntarily" produced some additional documents relating to this system, including [Redacted]. To date, ATS has not produced any of the requested documents showing in detail how this system worked.

video with the speed displayed as shown in Appendix A of the ATS offer. *Id*. Appendix A included several examples showing a vehicle, the speed of the vehicle, the date and time accurate to 1/100 of a second when the video image was taken, and other data. Redacted

*Id*. at ATS0047203 Redacted

*Id*. at ATS0047144.

During prosecution, ATS distinguished the red-light, video-based speed camera system described in the Ciolli prior art as insufficiently accurate to issue speeding citations. Doc. No. 87-5 at BW000238 ("Ciolli does not disclose an image-based speed calculation with the recited accuracy. Nor does Ciolli disclose issuance of a speeding citation based on such a calculation."). ATS did not disclose to the Patent Office, however, that it also had a Redacted B&W contends this was important information that would have precluded the '685 patent from issuing.[4]

Related to the surprising discovery during Tuton's deposition, B&W also searched for and found additional prior art that shows computer-vision software and technology that was available during the timeframe when ATS offered these video-based camera systems. *See* Exs. 12-16. Because ATS has not yet provided the other requested documents that would have shown exactly how this prior-art system worked, it remains unclear whether ATS used any of this known computer-vision technology for its video speed detection system that ATS offered to Seattle and Anne Arundel County. Regardless, if the claims are construed as broadly as ATS seeks, they are invalid in light of this prior art.

A claim is invalid under 35 U.S.C. § 102 if a reference "discloses all of the claim limitations and enables the subject matter that falls within the scope of the claims at issue." *Am.*

---

[4] Besides the obvious invalidity implications of this prior art, by withholding it from the Patent Office during prosecution, ATS may also have affected the '685 patent's enforceability. *See Aventis Pharma S.A. v. Hospira, Inc.*, 675 F.3d 1324, 1335 (Fed. Cir. 2012); *LaBounty Mfg., Inc. v. U.S. Int'l Trade Comm'n.*, 958 F.2d 1066, 1076 (Fed. Cir. 1992) ("Thus, the evidence amply supports an inference that LaBounty acted with culpable intent to mislead or deceive the PTO by withholding its own known prior art devices and by making an argument for patentability which could not have been made had the art been disclosed.").

8

*Calcar, Inc. v. Am. Honda Motor Co.*, 651 F.3d 1318, 1342 (Fed. Cir. 2011). Further, a claim is invalid as obvious under 35 U.S.C. § 103 if "the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which the subject matter pertains." *Bayer Schering Pharma AG v. Barr Labs., Inc.*, 575 F.3d 1341, 1346-47 (Fed. Cir. 2009). As shown in the summaries of the prior art attached as Ex. 11, all of the features recited in the '685 patent claims were well known in the prior art before Wang filed his patent application. Therefore, each of the asserted claims of the '685 patent is invalid.

### III.   NO LIKELIHOOD OF SUCCESS ON INFRINGEMENT

#### A.   The MVST System Does Not Infringe the '863 Patent

To accurately calibrate the MVST System to translate a video image into a real-world position, the MVST System requires the user to perform a number of steps. B&W's Brief at 10-11; Winkler Decl. (Doc. No. 104) at ¶ 21. Claims 1 and 16 of the '863 patent (unlike claim 21) require a "single step" *calibration* process to relate the set of video images to real world coordinates.[5] The MVST System takes more than a single step to calibrate the system to relate a set of video images to real world coordinates. Because the MVST System does not practice every limitation in claims 1 and 16, it does not infringe these claims.

#### B.   The MVST System Does Not Infringe the '685 Patent

##### 1.   *The MVST System does not satisfy the "timing information" requirement*

In its brief, ATS simply rehashes its claim construction arguments. ATS's Brief at 4-5. Notably, ATS does not dispute that if the Court construes the "timing information" limitation as

---

[5] ATS incorrectly suggests that B&W has abandoned its non-infringement argument relating to the '863 patent. ATS's Brief at 2-3. The fact that B&W did not repeat its argument in its *supplemental* interrogatory response is unremarkable. B&W's prior interrogatory response identified its non-infringement position.

9

requested by B&W, there is no infringement. *Id*. B&W has explained in detail why the intrinsic evidence shows that ATS's overly broad proposed definition is divorced from the intrinsic evidence and should not be adopted by the Court. *See* Doc. No. 87 at 8-11; Doc. No. 93 at 3-8. In the interest of brevity, B&W will not repeat this explanation here.

        2.    *The MVST System does not continuously recalculate speed or display a continuously updated speed*

Putting aside the parties' claim construction dispute relating to the display portion of the limitation, there can be no infringement under either party's proposed construction. ATS ignores the fact that the MVST System does not recalculate the speed of the vehicle as it moves through the measurement area—a requirement of both parties' proposed constructions. Winkler Decl. (Doc. No. 104) at ¶¶ 19 and 20; Doc. No. 79 at 16.

        3.    *The MVST System does not provide "live video" that displays speed*

ATS does not dispute that there is a time delay in the output video shown by the MVST System. This is clearly shown in the MVST Manual. *See* Doc. No. 104-6 at BW002199 ("The Output Video screen displays a slightly delayed version (about five seconds) of the traffic video which shows the speed of each vehicle."). ATS basically argues that "live video" should be broadly construed to cover recorded video replayed shortly after it was recorded. This contradicts the plain meaning of the claim limitation. ATS also waves its hand at the limitation by relying on marketing materials. *See* ATS's Brief at 6. But marketing materials are not sufficient evidence for a patent infringement allegation, as B&W explained in its opening brief. *See* B&W's Brief at 1-2.

**IV.    ATS CANNOT SHOW IRREPARABLE HARM**

    **A.    B&W is Not Causing Irreparable Harm to ATS**

10

On October 18, 2012, ATS filed its motion for preliminary injunction asserting that this case presented a significant risk of irreparable harm that warranted the "extraordinary remedy" that is a preliminary injunction. As discussed above and in B&W's Brief, ATS's infringement allegations—which at the time were based solely on B&W's marketing literature—were misplaced. Further, the passage of time since ATS filed its preliminary-injunction motion has betrayed the absence of any legitimate risk of irreparable harm posed by B&W or justification for the emergency procedures (and drain on Court and party resources) needed to resolve ATS's motion. In the seven months since ATS filed its motion, ATS cannot point to any interim instance in which B&W has allegedly harmed ATS—much less irreparably so. Indeed, the passage of time has revealed that ATS's allegations of the risk of irreparable harm were false alarms, at best. *See* B&W's Brief at 14. For example, at deposition, ATS's Executive Vice President, Adam Tuton, was unable to identify a single instance, during the last seven months, in which B&W's activities had harmed ATS. Ex. 19 at 50:7-55:8, 67:21-69:4, 82:12-83:20. In fact, Tuton had no knowledge of specific facts supporting the allegations in ATS's complaint. *Id.* at 106:17-112:13. B&W submits that when a business is facing the threat of irreparable harm, the Executive Vice President would know how it is being harmed.

ATS does not have a video speed detection (VSD) system on the market, and it is taking no steps to certify or commercialize this technology.[6] Yet, ATS argues that there is direct competition between B&W and ATS based on the selling of "functionally related" products, i.e.

---

[6] While the case was pending in Texas, ATS represented to the Court that ATS was working to certify the video-speed detection technology described in its asserted patents. *See* Plaintiff's Reply in Support of Motion for Preliminary Injunction (Doc. No. 38) at 4 ("The patented technology has not yet been appropriately certified, and *ATS is working towards accomplishing that*.") (emphasis added). Redacted

ATS's red-light cameras and radar speed detection technology. ATS's Brief at 10-12. In support of its argument, ATS cites eight cases, four of which are cases dealing with permanent injunctions.[7] These cases have no bearing on a preliminary injunction analysis. *Illinois Tool Works, Inc. v. Grip-Pak, Inc.*, 906 F.2d 679, 683-84 (Fed. Cir. 1990).

The non-permanent injunction cases cited by ATS in support of its irreparable harm argument are distinguishable from the facts of our case. The parties in the cases ATS cited provided extensive evidence of damages to the parties' reputation, good-will, and business opportunities. In contrast, ATS has shown *no evidence* of such harm other than self-serving declarations from its employees. Doc. No. 2-8 at ¶¶ 9-14. Further, ATS's cited cases find that either the products offered by the alleged infringer were being offered at substantial discounts, thus eroding the price of the "functionally related" product in the market,[8] or that the patentee had lost the first mover advantage to enter the specific market.[9] ATS has shown no evidence that B&W is eroding the price of VSD technology.

In a further attempt to support its irreparable harm argument, ATS asserts that it was B&W's "interference" during a sales pitch to the city of Memphis that caused ATS to lose "the opportunity to install speed camera systems in Memphis." ATS's Brief at 13. This statement is false. It was not B&W's competition in Memphis that prevented ATS from contracting with the city; it was the fact that Memphis has yet to pass an ordinance allowing speed cameras. [Redacted]

---

[7] *Robert Bosch LLC v. Pylon Mfg. Corp.*, 659 F.3d 1142 (Fed. Cir. 2011); *i4i Ltd. v. Microsoft Corp.*, 598 F.3d 831 (Fed. Cir. 2010); *Merial Ltd. v. Cipla Ltd.*, 681 F.3d 1283 (Fed. Cir. 2012); and *Graphic Packaging Int'l, Inc. v. C.W. Zumbiel Co.*, 2012 WL 3536983 (M.D. Fla. 2012) are all permanent injunction cases.

[8] *Celsis In Vitro, Inc. v. Cellzdirect, Inc.*, 664 F.3d 922, 930 (Fed. Cir. 2012); *Baker Hughs Inc. v. Nalco Co.*, 676 F. Supp. 2d 547, 554 (S.D. Tex. 2009)).

[9] *Butamax Advanced Biofuels LLC v. Gevo, Inc.*, 868 F. Supp. 2d 359, 374 (D. Del. 2012).

Redacted

.

ATS has produced <u>no evidence</u> that shows lost sales, lost opportunities, price erosion, a loss of a first mover advantage in the relevant market (VSD technology), harm to its reputation, or any other type of irreparable harm that was caused by B&W.  ATS points to four Missouri cities that contracted with B&W as evidence of harm, but ATS has no evidence showing that it would have received the speed camera business with these cities if B&W had not.  Simply because ATS had been providing red-light camera services to these cities does not mean that it would have been selected as the speed camera vendor.  *See* Ex. 19 at 55:14-59:18, 60:10-66:8; Ex. 20; Ex. 21.  Further, any lost revenue that did result from B&W contracting with these cities is easily calculated in the form of monetary damages, if ATS ultimately prevails in this lawsuit.

    **B.**  **B&W has Not Foreclosed Any Future Market for VSD Technology**

ATS next argues that B&W has foreclosed "any future market for ATS's patented video speed detection products," alleging that B&W has prematurely entered the market and tainted it with an unreliable and controversial product.  ATS's Brief at 13.  This assertion is baseless.  In support of its argument, ATS cites eight news articles discussing B&W's MVST System.  Doc. No. 106-14.  While ATS tries to portray these articles as placing B&W in a negative light, most of them, in fact, focus on criticizing the city of Charlack, Missouri, for a misunderstanding with MoDOT.  *Id.* at pages 9-24.  Nothing in these articles implies that B&W's MVST System is unreliable.  ATS claims that these articles "underscore[] the negative effect B&W's conduct has had on the market for video speed detection systems."  The reality, however, is that any negative public opinion is directed towards automated traffic enforcement generally, and is not limited to B&W.  For example, ATS has had its own fair share of negative publicity that could arguably

13

have "undermined customer interest in and public receptiveness to" automated traffic enforcement technology.[10]  For example, in one notorious incident in Florida, ATS's automatic traffic cameras ticketed a police-escorted funeral procession for running a red light and ATS refused to dismiss the ticket.[11]  Channel 4 News, in St. Louis, ran a story last fall highlighting the public outcry directed at the extreme amount of money generated by ATS's automated traffic cameras.[12]  In another instance, an ATS executive was caught posing as a concerned local citizen in Washington who supported the installation of automated traffic cameras.  *See* Ex. 22 at 2-5.

One of the articles cited by ATS alleges that John Baine (a B&W co-founder who is no longer associated with the company) was caught speeding.  Doc. No. 106-14 at 25-26.  Of course, this has no bearing on whether B&W's technology is reliable.  And James Tuton, ATS's CEO, appears to have been the target of the same hypocrisy allegations based on his own speeding violations.  *See* Ex. 22 at 16-18.  Any suggestion that B&W is the first automated traffic enforcement company to suffer some bad press or negative public sentiment ignores the facts.  ATS has no evidence to support its allegations that B&W is spoiling the market.

## V.     THE BALANCE OF EQUITIES WEIGHS IN B&W'S FAVOR

B&W has raised numerous substantial questions as to validity and infringement of the patents-in-suit as well as questions as to irreparable harm.  In the face of these substantial questions raised by B&W, the balance of equities favors denying the preliminary injunction.

---

[10] In ATS's own exhibit, the vitriolic and vulgar reader comments—including some in response to a post apparently made by ATS—were directed to both ATS and B&W.  Doc. No. 106-14 at 7.

[11] Ex. 22 at 23-24 (the video reporting this story from WSVN in Miami Florida can be found here: https://www.youtube.com/watch?v=eB2cZqvoOBI&feature=player_embedded).

[12] Ex. 22 at 19-21 (the video of this news story can be found here: http://www.kmov.com/home/Arizona-Brothers-making-Millions-on-Red-Light-Camera-Tickets-in-St-Louis-175861641.html).

B&W operates primarily in small cities in Missouri and controls an extremely small percentage of the automated traffic enforcement market, Redacted  . Granting the injunction at this time would likely put B&W out of business, while a denial would be only a minor inconvenience to ATS. The only "harm" ATS has identified is that it will be forced to compete against a much smaller company, whose only technology ATS contends is unreliable and uncertified. The balance of equities weighs in favor of denying the motion.

## VI.  THE PUBLIC INTEREST FAVORS DENYING ATS'S MOTION

ATS puts forth no new arguments regarding the fourth factor which requires the Court to weigh the public interest in the injunction. ATS rests its argument on the fact that if ATS has shown infringement, then the public interest favors an injunction. While it is true that the public has an interest in protecting patent rights, that interest can be counterbalanced by B&W's "continuing right to compete." *See Illinois Tool Works, Inc.*, 906 F.2d at 684. When determining the public's interest in the injunction, courts should also consider whether an injunction would have drastic effects on the alleged infringer (s*ee Medtronic, Inc. v. Telectronics, Inc.*, 686 F. Supp. 838, 847 (D. Colo. 1987)) and whether the public would be disserved by a preliminary injunction that removes a publicly beneficial product from the market (*see Datascope Corp. v. Kontron Inc.*, 786 F.2d 398, 401 (Fed. Cir. 1986)), both of which are true here.

## VII.  CONCLUSION

ATS failed to carry its burden on any of the four factors. B&W respectfully requests the Court to deny ATS's preliminary-injunction motion.

Dated:  May 28, 2013

Respectfully submitted,

SENNIGER POWERS LLP

By:    /s/ Marc Vander Tuig              
    Robert M. Evans, Jr., #35613MO
    Marc W. Vander Tuig, #52032MO
    Kyle G. Gottuso, #64869MO
    100 North Broadway
    17th Floor
    St. Louis, MO 63102
    Tel:  (314) 345-7000
    Fax:  (314) 345-7600
    Email:  revans@senniger.com
            mvandertuig@senniger.com
            kgottuso@senniger.com

*Attorneys for Defendant B&W Sensors LLC*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on this 28th day of May, 2013, the foregoing was electronically filed with the Clerk of court via the ECF/CM system and will be served upon all counsel of record by operation of the Court's ECF/CM system by means of a Notice of Electronic Filing.

    /s/ Marc Vander Tuig