UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| AMERICAN TRAFFIC SOLUTIONS, INC., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 4:13CV0229 AGF |
| B&W SENSORS, LLC, | ) ) | |
| Defendant. | ) ) | |

# **MEMORANDUM AND ORDER**

Plaintiff American Traffic Solutions, Inc. ("Plaintiff") brings this action alleging ongoing infringement by Defendant B & W Sensors LLC's ("Defendant") of Plaintiff's patents, U.S. Patent Nos. 8,184,863 ("the '863 patent") and 8,213,685 ("the '685 patent") (collectively the "patents-in-suit"). In Counts I and II, respectively, Plaintiff asserts that Defendant's U.S. Patent No. 8,284,996 ("the '996 patent") infringes Plaintiff's '863 patent and its '685 patent. In Counts III and IV, respectively, Plaintiff asserts claims for tortious interference and unfair competition.[1] Now before the Court is Defendant's motion for judgment on the pleadings and to dismiss Counts III and IV. For the reasons set forth below, Defendant's motion for judgment on the pleadings is denied.

---

[1] Plaintiff originally filed the action in Texas and in the complaint these claims are asserted under Texas law. The United States District Court for the Eastern District of Texas granted Defendant's motion to transfer venue to this District.

# BACKGROUND

## I. The Allegations

Plaintiff, an Arizona corporation, is engaged in the business of providing, servicing, and operating video traffic enforcement devices, including red light cameras and speed detection devices. Plaintiff does not currently practice either the '863 or the '685 patents and has not commercialized or licensed any of the speed detection systems described in those patents. Plaintiff does, however, market two other speed detection systems, RADAR and LiDAR. Plaintiff alleges that these systems directly compete with Defendant's system, the Multiple Vehicle Speed Tracking system ("MVST"), described in Defendant's '996 patent. Plaintiff also alleges that MVST infringes the '863 and the '685 patents. Plaintiff markets and maintains business relationships and contracts involving the RADAR and LiDAR systems with municipalities throughout the United States, including the Saint Louis Metropolitan area.

Defendant is a Missouri limited liability company with a place of business in St. Louis, Missouri. Defendant also is engaged in the business of providing, servicing, and operating video traffic enforcement and speed detection devices for municipalities throughout the United States. Plaintiff acknowledges that the MVST is a direct competitor of RADAR and LiDAR but denies that it has infringed either the '863 or the '685 patent.

Plaintiff alleges that it has on-going customer relationships with multiple municipal governments, has made significant investments in maintaining and cultivating these relationships, and has entrusted these customers with confidential and sensitive

competitive information about its research, development, and business such that, in the absence of Defendant's interference, there was a reasonable probability that these customers "would have contracted with [Plaintiff] for speed detection systems based on their existing relationship with Plaintiff." Complaint, Doc. No. 1 at ¶ 33. Plaintiff further alleges that Defendant, upon learning of Plaintiff's relationships with these customers, actively recruited those customers by falsely stating that: Plaintiff does not own video speed detection technology; Plaintiff could not offer or support speed detection systems and services; and Plaintiff is an expert only in red light cameras and not video speed detection cameras. *See id.* at ¶¶ 21 & 34. In addition, Plaintiff alleges that Defendant falsely represented that Defendant, rather than Plaintiff, developed the patented video speed detection technology, and promoted itself as a superior source of that technology, and falsely claimed an endorsement of its technology by the Texas Transportation Institute and Texas A&M University. *See id.* at ¶¶ 7, 21, 34.

Plaintiff next alleges that Defendant's intentional interference and wrongful acts "were neither privileged, nor justified," because they were "based on false or misleading information Defendant had provided to [Plaintiff's] customers," or "were designed to wrongfully effect, induct, and contribute to the infringement" of Plaintiff's patents or "motivated by the improper purpose of supplying knock-off products that infringe [Plaintiff's] patented technology into the market." *Id.* at ¶ 35. Further, Plaintiff contends that Defendant's acts of interference caused Plaintiff's customers "to break off their dealings with [Plaintiff]" and thereby caused damage to Plaintiff's business, market, reputation, and goodwill. *Id.* at ¶¶ 34, 36, 38, 39..

Finally, Plaintiff alleges that Defendant, in the course of promoting its competing products to Plaintiff's customers and prospective customers, made false representations and deceptive statements concerning Plaintiff and its products, including, among other things, falsely stating that Plaintiff does not own and cannot offer or support video speed detection technology. Plaintiff also asserts that these misrepresentations were made to gain competitive advantage and have caused Plaintiff's customers to break off their dealings with Plaintiff and resulted in damage to Plaintiff's business, market share, reputation, and goodwill. *See id*.

## II. The Arguments of the Parties

Defendant first argues that Plaintiff's common law claims for tortious interference and unfair competition are preempted under federal patent law. Defendant further contends that Plaintiff has not pled the elements necessary to state a claim for relief on either count. With respect to Plaintiff's allegations that Defendant made false representations in the marketing of MVST, Defendant further contends that Plaintiff is required and fails to plead fraud with particularity, as set forth in Federal Rule of Civil Procedure 9(b). Specifically, Defendant argues that compliance with Rule 9(b) is required because Plaintiff's tort claims include allegations of fraud or a fraudulent scheme.

In response, Plaintiff asserts that the tort claims alleged here are not preempted by federal patent law because they require additional elements of proof apart from those necessary to demonstrate the alleged infringement. In the alternative, Plaintiff contends that even if preemption were applicable here, Defendant has waived the preemption

argument by failing to plead preemption as an affirmative defense. Plaintiff further argues that it has alleged facts adequate to state a claim for relief with respect to each of the common law tort claims. Finally, Plaintiff asserts that Rule 9(b) is not applicable to the claims alleged, but even if it were, that Plaintiff has alleged fraud with sufficient particularity to satisfy the requirements of Rule 9(b).

## APPLICABLE LAW

### I. Standard of Review

"After the pleadings are closed–but early enough not to delay trial–a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). In ruling upon either a Rule 12(c) motion for judgment on the pleadings or a Rule 12(b)(6) motion to dismiss for failure to state a claim, courts in this Circuit apply the same standard of review. *See Bass v. Anoka County*, 2014 WL 683969, at *1 (D. Minn. Feb. 21, 2014) (citing *Clemons v. Crawford*, 585 F.3d 1119, 1124 (8th Cir. 2009)). For purposes of either type of motion, a court must view the allegations of the complaint in the light most favorable to the plaintiff. *See Kottschade v. City of Rochester*, 319 F.3d 1038, 1040 (8th Cir. 2003). The complaint must state "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A pleading that offers [merely] 'labels and conclusions' or 'naked assertion[s]' devoid of 'further factual enhancement' does not plausibly establish entitlement to relief under any theory." *C.N. v. Willmar Public Schools, Dist. No. 347*, 591 F.3d 624, 634 (8th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 678) (internal quotation omitted)). The purpose of this threshold pleading requirement

is to allow a defendant "to test the legal sufficiency of a complaint so as to eliminate those actions which are fatally flawed in their legal premises and designed to fail, thereby sparing litigants the burden of unnecessary pretrial and trial activity." *Flynn v. CTB, Inc.*, No. 1:12–CV–68 SNLJ, 2013 WL 28244, *1 (E.D. Mo. Jan. 2, 2013) (citing *Young v. City of St. Charles, Mo.*, 244 F.3d 623, 627 (8th Cir. 2001) (internal quotation omitted)).

## II. Preemption

### A. Preemption as an Affirmative Defense

Federal preemption is an affirmative defense. *Wuebker v. Wilbur-Ellis Co.*, 418 F.3d 883, 886 (8th Cir. 2005) (recognizing that "preemption is an affirmative defense"); *see also* Fed. R. Civ. P. 8(c) (noting that "[i]n responding to a pleading, a party must affirmatively state any avoidance or affirmative defense"); *Jacobs Mfg. Co. v. Sam Brown Co.*, 19 F.3d 1259, 1266 (8th Cir. 1994). Failure to plead an affirmative defense may, but will not always, result in waiver of that defense. *See First Union Nat. Bank v. Pictet Overseas Trust Corp.*, 477 F.3d 616, 622 (8th Cir. 2007) (quotation omitted). The Eighth Circuit has rejected a formalistic approach to Rule 8(c) and the waiver of affirmative defenses. Instead it holds that "[w]hen an affirmative defense is raised in the trial court in a manner that does not result in unfair surprise . . . technical failure to comply with Rule 8(c) is not fatal." *Id.*; *see also Sanders v. Dep't of the Army*, 981 F.2d 990, 991 (8th Cir.1992) (concluding that a district court did not abuse its discretion by allowing an affirmative defense to be raised for the first time on a motion to dismiss).

B.  Patent Law and the Preemption of State Tort Claims

The Supreme Court recognizes three types of preemption: express, field, and conflict.  *English v. Gen. Elec. Co.*, 496 U.S. 72, 78-79 (1990).  Pursuant to the doctrine of conflict preemption, which the parties agree is at issue here, state law is preempted "to the extent that it actually conflicts with federal law" or where it "'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'"  *Id.* at 79 (quoting *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941)).

For purposes of patent claims, the Federal Circuit has adopted a "conduct-based" approach to conflict preemption.  *See Hunter Douglas, Inc. v. Harmonic Design, Inc.*, 153 F.3d 1318, 1335 (Fed. Cir. 1998), *overruled on other grounds*, *Midwest Indus., Inc. v. Karavan Trailers, Inc.*, 175 F.3d 1356, 1359 (Fed. Cir. 1999).  This approach directs courts to look to the nature of the conduct alleged in order "[t]o determine whether . . . state law torts are in conflict with federal patent law and accordingly preempted . . . ."  *Id.*

Courts applying this approach hold that state law tort claims are not preempted where the state law claims "'include additional elements not found in the federal patent law cause of action and . . . are not an impermissible attempt to offer patent-like protection to subject matter addressed by federal law.'"  *Sukumar v. Nautilus, Inc.*, 829 F. Supp. 2d 386, 397 (W.D. Va. 2011) (quoting *Rodime PLC v. Seagate Tech., Inc.*, 174 F.3d 1294, 1306 (Fed. Cir. 1999)); *see also Dow Chem. Co. v. Exxon Corp.*, 139 F.3d 1470, 1473 (Fed. Cir. 1998) (holding that a state tort claim such as tortious interference "is not preempted by the federal patent law, even if it requires . . . adjudicat[ion of] a question of federal patent law, provided the state law cause of action includes additional

- 7 -

elements not found in the federal patent law cause of action and is not an impermissible attempt to offer patent-like protection to subject matter addressed by federal law").

Applying these principles, courts have held that claims of tortious interference or unfair competition are not preempted by strict liability patent infringement claims because the tort claims require proof of knowledge or intent, or other elements that ensure that the claims are not inconsistent with, or a duplicative method for the enforcement of patent rights. *See, e.g., Cal. Table Grape Comm'n v. RB Sandrini, Inc.*, No. 1:06-cv-00842-OWW-TAG, 2007 WL 1847631, at *27 (E.D. Cal. June 27, 2007) (rejecting the argument that federal patent law preempts claims for unfair competition and tortious interference because the state tort claims "have different elements and do not constitute an impermissible attempt to offer patent-like protection" to unpatented products); *Agrizap, Inc. v. Woodstream Corp.*, 450 F. Supp. 2d 562, 566 (E.D. Pa. 2006) (rejecting preemption argument where patent infringement was alleged as basis for unfair competition and misrepresentation claims, because the tort claims required proof of elements not required to prove infringement); *Cryovac Inc. v. Pechiney Plastic Packaging, Inc.*, 430 F. Supp. 2d 346, 359 (D. Del. 2006) (holding that federal patent law did not preempt a state tortious interference claim where patent infringement provided the "wrongful conduct" element of interference; tort claim was asserted in conjunction with, and did not conflict with, patent law and required proof of additional elements, including mental state and the existence and loss of a business expectancy).

## III. **The Tort Claims**

As noted above, Plaintiff originally pled its common law tort claims under Texas law. Defendant now questions Plaintiff's basis for asserting these claims under Texas law, and suggests that the alleged tortious acts occurred in Missouri and Tennessee, and that either Missouri or Tennessee law may be applicable to these claims. However, Defendant has not briefed the choice of law issue or asserted that the Court's determination would be altered by the application of Missouri or Tennessee law rather than Texas law. In the absence of the parties' further development of the issue, the Court presumes that Texas law is applicable. The Court notes, however, that its review of the Texas and Missouri cases offered by the parties indicates that under the law of either state, the elements of the torts asserted are substantially identical.

A. Tortious Interference

Under Texas law "[t]he elements of a cause of action for tortious interference with an existing contract are: (1) the plaintiff had a valid contract; (2) the defendant willfully and intentionally interfered with the contract; (3) the interference proximately caused the plaintiff's injury; and (4) the plaintiff incurred actual damage or loss." *Fisher v. Blue Cross Blue Shield of Texas., Inc.*, No. 3:10-cv-2652-L-BK, 2011 WL 11703781, at *9 (N.D. Tex. June 27, 2011) (citation omitted). And the elements of a claim for tortious interference with a prospective business relationship are: "(1) a reasonable probability that the plaintiff would have entered into a contractual relationship; (2) an intentional or malicious act by the defendant that prevented the relationship from occurring with the purpose of harming the plaintiff; (3) lack of privilege or justification for the act; and (4)

actual harm or damage incurred as a result of the defendant's interference." *Id.* (citation omitted).

Under Missouri law, the elements of a claim for tortious interference with a contract or business expectancy are substantially similar and require: (1) the existence of a contract or valid business expectancy; (2) defendant's knowledge of the contract or business relationship; (3) breach or loss of the expectancy induced or caused by defendant's intentional interference; (4) the absence of justification; and (5) damages. *See McGuire v. Tarmac Envt'l. Co.*, 293 F.3d 437, 441 (8th Cir. 2002); *see also Clinch v. Heartland Health*, 187 S.W.3d 10, 15 (Mo. Ct. App. 2006) (citing *Rice v. Hodapp*, 919 S.W.2d 240, 245 (Mo. 1996)). In this context, Missouri courts apply a "but-for" test of causation and inquire whether a defendant took active and affirmative steps to induce the breach or loss; and if so, whether the contract or expectancy would have been performed absent the defendant's interference. *See McGuire*, 293 F.3d at 441.

B. Unfair Competition

Under Texas law, the tort of unfair competition is treated as "'the umbrella for all statutory and non-statutory causes of action arising out of business conduct which is contrary to honest practice in industrial or commercial matters.'" *Taylor Publ'g Co. v. Jostens, Inc.*, 216 F.3d 465, 486 (5th Cir. 2000) (citation omitted) (applying Texas law). A plaintiff alleging unfair competition under Texas law must establish that the defendant committed an illegal act, which must be, at the very least, an independent tort, that "interfered with the plaintiff's ability to conduct its business." *Id.* The illegal act need not, however, amount to a criminal violation. *Id.* For example, the torts of false

advertising, business disparagement, and tortious interference with a reasonable business expectancy have each been held sufficient under Texas law to satisfy the independent tort element of a claim for unfair competition. *Id.*

Under Missouri law, the test for unfair competition is "whether the defendant's acts are such as are calculated to deceive the ordinary buyer making his purchases under the ordinary conditions which prevail in the particular trade to which the controversy relates." *Hubbs Mach. & Mfg., Inc. v. Brunson Instr. Co*., 635 F. Supp. 2d 1016, 1018-19 (E. D. Mo. 2009) (applying Missouri law); *see also American Equity Mortg., Inc. v. Vinson*, 371 S.W.3d 62, 64 (Mo. Ct. App. 2012) (unfair competition consists of passing off or attempting to pass off the business of one as the business of another) (citing *Nat'l Motor Club of Mo., Inc. v. Noe*, 475 S.W.2d 16, 19-20 (Mo.1972)).

When analyzing unfair competition claims, Missouri courts look to the Restatement (Third) of Unfair Competition. *See Hubbs Mach. & Mfg., Inc*, 635 F. Supp. 2d at 1019 (internal citation omitted). Under the Restatement, liability for causing harm to the commercial relations of another can result from "acts or practices relating to (1) deceptive marketing; (2) infringement of trademarks and other indicia of identification; and (3) appropriation of intangible trade values including trade secrets and the right of publicity." *Id*. (citing Restatement (Third) of Unfair Competition § 1 (1995)).

### IV. **Pleading Requirements Under Rule 9(b)**

#### A. Application to Common Law Torts

Rule 9(b) provides that "all averments of fraud or mistake . . . shall be stated with particularity." The heightened pleading requirements of Rule 9(b) do not automatically

apply to claims of tortious interference or unfair competition. *See, e.g., Merrill Lynch, Pierce, Fenner & Smith, P.C. v. Greystone Servicing Corp*., No. 3:06-CV-0575-P, 2007 WL 2729935, at *14 (N.D. Tex. Sept. 18, 2007) (applying Texas law and concluding that Rule 9(b) should not be applied to claims for tortious interference unless those allegations are "intertwined" with allegations of fraud). Nevertheless, courts hold that the heightened pleading standard applies if a claim rests on allegations of fraudulent or misleading conduct even if fraud is not a required element of the claim. *See, e.g., Monsanto Co. v. E.I. DuPont de Nemours and Co.*, No. 4:09CV00686 ERW, 2012 WL 3765059, at *3 (E.D. Mo. Aug. 30, 2012) (noting the application of Rule 9(b) to unfair competition and related claims based on allegations of false statements); *SL Montevideo Technology v. Eaton Aerospace, L.L.C*., 292 F.Supp.2d 1173, 1179 (D. Minn. 2003) (noting that Rule 9(b) is clear that "*all averments of fraud or mistake* . . . shall be stated with particularity") (emphasis supplied). By contrast, malice, intent, knowledge, and other conditions of mind are not subject to the particularity requirement and may be averred generally. *See* Fed. R. Civ. P. 9(b).

    B. <u>Required Particularity</u>

Under Rule 9(b), "the circumstances constituting fraud . . . shall be stated with particularity." "Put another way, '[w]hen pleading fraud, a plaintiff cannot simply make conclusory allegations.'" *Foam Supplies, Inc. v. The Dow Chemical Co.*, No. 4:05CV1772 CDP, 2006 WL 2225392, at *13 (E.D. Mo. Aug. 2, 2006) (quoting *Roberts v. Francis*, 128 F.3d 647, 651 (8th Cir.1997) (citation omitted)). To satisfy the requirements of Rule 9(b) the pleadings should contain allegations concerning "the time,

place, and contents of the alleged fraud; the identity of the person allegedly committing fraud; and what was given up or obtained by the alleged fraud." *Id.* at *14 (internal quotation omitted).

A plaintiff need "not necessarily plead all of these factors under Rule 9(b), but must plead 'enough so that his/her pleadings are not merely conclusory.'" *Id*. (quoting *Roberts*, 128 F.3d 647 at n. 5). In sum, "[t]he special nature of fraud does not necessitate anything other than notice of the claim; it simply necessitates a higher degree of notice, enabling the defendant to respond specifically, at an early stage in the case, to potentially damaging allegations of immoral and criminal conduct." *Abels v. Farmers Commodities Corp.*, 259 F.3d 910, 920 (8th Cir. 2001); *see also Drobnak v. Andersen Corp.*, 561 F.3d 778, 783-84 (8th Cir. 2009) (explaining that one alleging fraud as a component of a claim must plead "the who, what, where, when, and how of the alleged false representation") (internal quotation omitted); *Axcan Scandipharm, Inc. v. Ethex Corp.*, 585 F. Supp. 2d 1067, 1084 (D. Minn. 2007) (noting that Rule 9(b) is satisfied if the complaint sufficiently apprises the defendant "'of the nature of the claim and the acts . . . relied upon by the plaintiff' as constituting the unlawful conduct") (ellipsis in original) (quoting 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure: Civ. 2d § 1297 (3d ed. 2007)).

## DISCUSSION

### I. Preemption

As a preliminary matter, the Court holds that Defendant has not waived preemption as an affirmative defense. A finding of waiver is not justified here inasmuch

as Defendant raised the preemption defense relatively early in the litigation and in a manner that has not resulted in unfair surprise and permits Plaintiff to fully respond to the asserted defense. *See First Union Nat. Bank*, 477 F.3d at 622.

Upon review of Plaintiff's allegations in Counts III and IV, the Court further concludes that neither of those claims is preempted by federal patent law. Although each claim makes reference to Defendant's alleged infringing activities, it also requires proof of an additional element, such as knowledge or causation that is not a part of the patent claim. *See Dow Chem. Co.*, 139 F.3d at 1473. In addition, the Court finds no indication that Plaintiff's pursuit of these claims is an attempt to extend "patent-like protection to products or processes unpatentable under federal patent law." *Sukumar*, 829 F. Supp. 2d at 397 (internal quotation omitted).

The Court does not agree with Defendant's assertion that the state tort claims alleged here are premised solely upon the purported acts of patent infringement. Rather, Plaintiff asserts associated, but distinct, misconduct related to the alleged infringement. This associated conduct involves knowing and intentional misrepresentations that interfered with Plaintiff's ability to obtain and maintain contracts, customer relationships, and market share. Where, as here, the act of patent infringement supplies only one element of the alleged tort, the tort claim is not preempted. *See Agrizap, Inc.*, 450 F. Supp. 2d at 566. In addition, compensation for such injury is distinguishable from, but consistent with, the goals of the federal patent laws and therefore, not preempted. *Sukumar*, 829 F. Supp. 2d at 397.

## II. Plaintiff has Adequately Alleged its Tort Claims

Defendant also moves for dismissal of Plaintiff's claims for intentional interference with a business expectancy and unfair competition on the ground that Plaintiff fails to state a claim upon which relief can be granted. Upon review of the pleadings, the Court concludes that Plaintiff has set forth factual allegations sufficient to plead the required elements of each of those claims.

### A. Tortious Interference

Specifically, Plaintiff alleges that it had on-going customer relationships and contracts as well as a significant investment in maintaining and cultivating these relationships, and that, in the absence of Defendant's interference, there was a reasonable probability that these customers "would have contracted with [Plaintiff] for speed detection systems based on their existing relationship with Plaintiff." Doc. No.1 at ¶ 33. Plaintiff also alleges that Defendant, upon learning of Plaintiff's relationships with these customers, actively recruited those customers by way of misrepresentations that "were neither privileged, nor justified," because they were "based on false or misleading information Defendant had provided to [Plaintiff's] customers," or "were designed to wrongfully effect, induct, and contribute to the infringement" of [Plaintiff's] patents or "motivated by the improper purpose of supplying knock-off products that infringe [Plaintiff's] patented technology into the market." *Id.* at ¶ 35. And finally, Plaintiff alleges that Defendant's acts of interference caused Plaintiff's customers "to break off their dealings with [Plaintiff]" and thereby caused damage to Plaintiff's business, market, reputation, and goodwill. *Id.* at ¶¶ 34, 36, 38, & 39.

These allegations are more than sufficient to state a cause of action for intentional interference with a business expectancy or contract. *See, e.g., Fisher*, 2011 WL 11703781, at *9 (finding under Texas law that plaintiff's complaint "properly pled a claim for tortious interference that gives the [d]efendant fair notice of what the claim is and the grounds upon which it rests"); *Clinch v. Heartland Health*, 187 S.W.3d 10, 15 (Mo. Ct. App. 2006) (same, under Missouri law).

    B. <u>Unfair Competition</u>

With respect to the claim of unfair competition, Plaintiff alleges that Defendant falsely represented to purchasers and potential purchasers of video speed detection technology that Plaintiff did not own and could not offer or support such speed detection systems; and did not have expertise in the field of speed detection cameras. *See id.* at ¶¶ 21 & 34. In addition, Plaintiff alleges that Defendant falsely represented that Defendant, rather than Plaintiff, developed the patented video speed detection technology, and falsely claimed an endorsement of its technology by the Texas Transportation Institute and Texas A&M University. *See id*. at ¶¶ 7, 21, 34. Plaintiff further alleges that, by way of these representations, Defendant unfairly claimed that it could offer the expertise and advantages attributable to Plaintiff and its systems, in order to gain a competitive advantage over Plaintiff in the market for video speed detection systems. The Court concludes that these allegations are more than sufficient to state a cause of action for unfair competition. *See Taylor Publ'g Co.*, 216 F.3d at 486 (applying Texas law); *American Equity Mortg., Inc*, 371 S.W.3d at 64 (applying Missouri law).

## III. Plaintiff has Pled its Claims with the Required Particularity

Defendant has not offered and the Court has not identified a case in which Rule 9(b)'s heightened pleading requirements were applied to a claim for tortious interference with a business expectancy. Recognizing however, that Plaintiff's tort claims both involve alleged misrepresentations, the Court assumes, without deciding, that Rule 9(b) is applicable to those allegations.

Applying the heightened pleading standard here, the Court is satisfied that Plaintiff's claims for tortious interference and unfair competition are pled with the requisite particularity. Plaintiff pleads the who (Defendant), what (false statements and advertising), where (on Defendant's website and in statements directed to Plaintiff's customers), when (since learning of Plaintiff's relationships with its customers), how (falsely stating, among other things, that Plaintiff does not own video speed detection technology, that Plaintiff could not offer or support speed detection systems and services, and that Plaintiff is only an expert in red light cameras and not speed cameras), and why (to obtain business from Plaintiff's long term and prospective customers and to gain an unfair competitive advantage).[2] In so doing, Plaintiff has apprised Defendant "'of the nature of the claim and the acts . . . relied upon by the plaintiff' as constituting the

---

[2] Although the parties have conducted only limited discovery for purposes of the motion for preliminary injunction, the record already contains additional detail with respect to these questions. *See* Doc. No. 2, at 2; Doc. No. 2-8, Ex. 5 (quoting statements of Defendant's founder, John Baine, with respect to Defendant's product); Doc. No. 26, at 10-11 (providing additional information regarding representations that the Texas Transportation Institute and Texas A&M University endorsed Defendant's product over Plaintiff's).

unlawful conduct." *Axcan Scandipharm*, 585 F. Supp. 2d at 1084 (internal quotations omitted).

Defendant argues that these allegations are insufficient because they fail to identify specific dates and times and the individuals who allegedly made the statements. The Court does not agree. All particulars are not required, and here the allegations provide sufficient notice to enable Defendant to respond specifically, at an early stage in the case, to potentially damaging allegations of misrepresentation. *See Abels*, 259 F.3d at 920; *see also Foam Supplies, Inc*, 2006 WL 2225392, at *13.

The Court is satisfied that Defendant has sufficient notice of the factual basis of Plaintiff's claims, to permit it adequately to respond. Whether Plaintiff will be able, through discovery, to develop sufficient detailed evidence regarding the alleged misrepresentations to survive a motion for summary judgment, is a question for another day. *See Roberts*, 128 F.3d at 647 n. 5.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's motion for judgment on the pleadings with respect to Counts III and IV of Plaintiff's complaint is **DENIED**. (Doc. No 80.)

/s/ Audrey G. Fleissig
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 27th day of March, 2014.